UNITED STATES of America

v.

**William PENN.**

**Criminal No. JFM–91–0370.**

United States District Court, D. Maryland.

July 15, 1998.

Martin Clarke, Assistant U.S. Attorney, Baltimore, MD, for Plaintiff.

Gary A. Ticknor, Baltimore, MD, for Defendant.

*MEMORANDUM*

MOTZ, Chief Judge.

William Penn pled guilty to one count of unlawful distribution and possession with intent to distribute crack cocaine and on December 11, 1992 was sentenced to forty-six

---

**16.** Id. at ¶ 58(b)(i)-(ii).

**17.** Id. at ¶¶ 107–112.

**18.** Id. at ¶¶ 54(e), 59, 60 and 69.

months imprisonment to be followed by four years of supervised release. In March 1994, the Government moved under Rule 35(b) for a reduction of Penn's sentence based upon his substantial assistance. On April 1, 1994, he was resentenced by this Court to a period of thirteen months and fourteen days imprisonment, which equated to time served. The Court's order further required that "[u]pon release from imprisonment, the defendant shall be on supervised release for a term of four (4) years." Penn was not released by the Bureau of Prisons until April 18, 1994, seventeen days after his sentence of imprisonment expired. On April 26, 1994, Penn and a United States Probation Officer signed a document which specified that Penn's "term of supervision is for a period of 4 years, commencing 4–18–94." Penn allegedly violated the terms of his supervisory release, and on or about April 13, 1998, a probation officer filed a probation violation petition against the defendant. An arrest warrant was issued by this Court on April 15, 1998. Penn has moved to dismiss this warrant for lack of jurisdiction.

## I.

Under 18 U.S.C. § 3583(i) "[t]he power of the court to revoke a term of supervised release ... extends beyond the term of supervised release ... if, *before its expiration,* the warrant or summons has been issued on the basis of an allegation of such a violation." *Id.* (emphasis added). Section 3624 provides that a person's "term of supervised release commences on the day the person is released from imprisonment ..." and that "[a] term of supervised release does not run during any period in which the person is imprisoned in connection with a conviction for a Federal, State or local crime ..." 18 U.S.C. § 3624(e). Under the plain terms of these statutory provisions Penn's four years of supervised release did not begin to run any earlier than April 18, 1994 because until that date he was still imprisoned.

However, § 3624 further provides that a "prisoner shall be released by the Bureau of Prisons on the date of the expiration of the prisoner's term of imprisonment." 18 U.S.C. § 3624(a). Penn argues that his supervised release should run from the day he *should* have been released as opposed to the day he physically was released, and that under the terms of the judgment and commitment order entered by this court he was to be released on April 1, 1994, more than four years before the revocation warrant was issued.

Penn relies upon two cases in support of his argument. In one of these cases, *United States v. Vallejo,* 69 F.3d 61 (5th Cir.1997), the defendant's convictions under 18 U.S.C. §§ 922(*l*) and 922(g)(1) were reversed and remanded for retrial in the wake of the Supreme Court's decision in *Bailey v. United States,* 516 U.S. 137, 116 S.Ct. 501, 133 L.Ed.2d 472 (1995). Upon remand the defendant was released on bond. Thereafter, instead of being retried, he plead guilty to a superseding information charging him with a violation of 18 U.S.C. § 545, and was sentenced to time served plus one year of supervised release. Within one year of being resentenced, but beyond one year of having been released on bond, the defendant committed a violation of supervised release and was sentenced to 12 months incarceration. On appeal he argued that the district court had been without jurisdiction because under the literal terms of § 3624 his supervised release had begun to run on the day he was released on bond. The Ninth Circuit disagreed, holding instead that his supervised release began to run on the day he was resentenced.

Superficially, it might appear that *Vallejo* is directly on point since Penn is arguing that his supervised release began to run on the date he was resentenced. However, the circumstances of this case and of *Vallejo* are not comparable since Penn had not been released before he was resentenced. The Ninth Circuit reached the conclusion it did in *Vallejo* because the purposes of supervised release would not be served by having the period of supervised release begin while a defendant is free on bail without being subject to the terms and conditions of supervised release. In the present case, to the extent that this consideration is relevant at all, it weighs against Penn's position since he did not become subject to the terms and conditions of

supervised release until he was released from custody on April 18, 1994.

The second case upon which Penn relies is *United States v. Blake*, 88 F.3d 824 (9th Cir.1996). In *Blake* the defendants received sentence reductions less than the amount of time already served when the guidelines affecting the manner of calculating marijuana for sentencing purposes were modified retroactively. In this context the Ninth Circuit determined that the period of supervised release ran from the date the defendants should have been released, rather than the date they were, in fact, released.

Although *Blake* provides greater support to Penn than does *Vallejo*, it is of limited precedential value. The Ninth Circuit expressly confined its holding to cases involving retroactive amendments to the sentencing guidelines. Moreover, the First Circuit disagreed with the *Blake* decision in *United States v. Joseph*, 109 F.3d 34 (1st Cir.1997). There, the defendant had been convicted of two substantive offenses and of a related firearms offense under 18 U.S.C. § 924(c). He had completed service of his sentences on the two substantive offenses and one-half of his sentence on the § 924(c) charge when the *Bailey* decision was issued. In a § 2255 action the district court vacated the defendant's § 924(c) conviction and ordered his release from custody. However, the court further directed that the three year and five year concurrent terms of supervised release on the two substantive crimes of which the defendant had been convicted should begin to run on the date of his release, rather than on the date that the defendant's sentences on the substantive offenses had expired.

This ruling was affirmed on appeal. Recognizing that an equitable argument could be made that the defendant should have been "given credit for incarceration now found improper by offsetting the excess time he spent in prison against the terms of supervised release," 109 F.3d at 37, the court nonetheless found that, since Joseph was still imprisoned on the date he sought to use as the starting point for his supervised release, he was "under the plain language of § 3624(e), ineligible for supervised release." *Id.* As further stated by the court, "[t]he fact remains that § 3624(e) ties the beginning of a term of supervised release to release from imprisonment. It forbids the running of the term of supervised release during any period in which a person is imprisoned." *Id.* Moreover, as the court pointed out, § 3583(e) provides an avenue of relief for a defendant who has been held in custody longer than he should have been by enabling him to request an early termination of supervised release "in the interest of justice."

I find that reasoning of the *Joseph* court to be persuasive.[1] Accordingly, I will deny Penn's motion to dismiss and proceed to a revocation hearing.

## ORDER

For the reasons stated in the accompanying Memorandum entered herewith, it is this 15th day of July, 1998, ORDERED

that the Defendant's motion to dismiss is denied.

---

1. I recognize that in *Joseph* the court noted that the defendant's confinement was "appropriate" and "legal" before the *Bailey* decision was rendered, 109 F.3d at 38, whereas here it can be argued that the Bureau of Prisons should not have been holding Penn in custody for the seventeen days between the date of the resentencing order and the date of his actual release. I note, however, that there is absolutely no evidence that the BOP acted in bad faith. Any delay in his release appears to have attributable to normal processing. In any event, the language of the second sentence of § 3624(e) does not distinguish between "legal" and "illegal" custody when stating that "the term of supervised release commences on the day the person is released from custody." Remedies for illegal incarceration lie elsewhere in the law, such as a *Bivens* action for monetary damages or, as stated in the text, a motion under § 3583(e) for the early termination of supervised release.